307 So.2d 153 (1974)
Peter GONZALES et ux.
v.
The XEROX CORP. et al.
No. 10054.
Court of Appeal of Louisiana, First Circuit.
December 16, 1974.
Rehearings Denied February 10, 1975.
Writ Granted March 21, 1975.
*154 Roy Maughan, Baton Rouge, and Elliott W. Atkinson, Jr., Baton Rouge, for appellants.
Charles W. Franklin, Baton Rouge, for appellees.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
BLANCHE, Judge.
Plaintiff-appellant, Peter Gonzales, appeals from a jury verdict in favor of The Xerox Corporation.
On July 7, 1973, Dawn Rene Gonzales was struck by defendant's automobile driven by Juan G. Hernandez. Gonzales and his wife were at Grand Isle with their two daughters and Mr. Gonzales' father, for a holiday of fishing and bathing. Just prior to the accident, Gonzales was on the beach with his two children watching his father fish. Desiring to return to his beach accommodations to take a shower, Gonzales left four and one-half year old Dawn Rene under the charge of her eight year old sister. He proceeded away from the beach and crossed Louisiana Highway 1, which runs generally in an east-west direction at that point, approximately 150 feet from the water's edge. Instead of remaining on the beach with her sister as her father had instructed, *155 little Dawn Rene also decided to return to the beach house. She followed her father across the sand and approached the highway. By this time Gonzales had reached his beach house and was calling his wife to go to the beach and look after the children. At that same moment he turned and looked back across the highway just in time to see his daughter being struck by defendant's automobile.
There is conflict in the evidence concerning exactly what happened when the four-year old reached the roadside.
One witness, Don Barrios, who was approaching the scene of the accident on his motorcycle and traveling in a westerly direction, testified he saw the little girl at the edge of the road and then saw her run directly in front of the defendant's automobile. His oral deposition was entered to impeach his testimony at the time of the trial because he had previously stated he did not see her standing on the edge of the road. His explanation for the conflict in testimony was that he was scared both at the time of the deposition and also at the time of the trial.
Another witness, John Thibaut, testified that Dawn Rene definitely stopped and watched one car go by proceeding in a westerly direction. He placed her position at a point about three feet from the edge of the highway. The evidence is conclusive that the shoulder of Highway 1 was clear and the view of the path traveled by Gonzales and his daughter was unobstructed. Thibaut testified the little girl allowed the car she was observing to pass, then without turning to observe the other lane, walked onto the highway. He testified the defendant's car was less than braking distance from Dawn Rene when she entered the highway and at that point the driver might possibly have avoided the accident, but he did not think it was possible to actually stop within that distance. Dawn Rene was struck by the left front fender of defendant's automobile at a point approximately three-fourths of the distance across the lane being traveled by defendant.
Defendant driver Hernandez testified there was nothing on the side of the road to prevent him from seeing the little girl, and he did not see her until she was two car lengths in front of him. Mrs. Hernandez, a passenger in defendant's car, testified the little girl was already in the middle of the lane before she saw the child.
Dawn Rene was killed instantly and Peter Gonzales brought this wrongful death suit in his own right and on behalf of his wife Patricia against Juan G. Hernandez, the driver of the vehicle, The Xerox Corporation, employer of Hernandez, and Employers Insurance of Wausau, the insurer of Xerox.
Many issues are raised on appeal. However, only one need be discussed.
Plaintiffs submitted that the following suggested instruction be given to the jury:
"A motorist's duty to look ahead and observe never ceases, and a motorist must see what he can see and in legal contemplation does see, and his failure to see what he could have seen by exercising due diligence does not absolve him from liability in resulting injuries to others."
The trial court did not use this instruction but stated:
"In considering whether there is negligence in this particular case, the law is to the effect that persons operating automobiles on public streets and highways in the vicinity of small children have a high duty of care. The motorist encountering children upon the roadside must anticipate that the very young are possessed of but limited judgment and that their actions are likely to be sudden, unpredictable and often foolish." (Record, p. 173)
In support of his proposed instruction, plaintiff cites Pea v. Smith, 224 So.2d 37 (La.App. 1st Cir. 1969), wherein it states *156 that a motorist not seeing what he should have seen and not observing a child standing on the edge of a street and in not taking all necessary action to prevent harm was negligent.
We do not hold that a trial court must use the exact instructions submitted by each party. However, whatever charge it does give must adequately reflect the law on the issues presented by the facts. In this case we do not think the trial judge's instructions were adequate. In light of the Pea case, and countless other cases to the same effect, the circumstances of the instant case develop the following question of fact: Even if defendant under these particular facts did not have to anticipate a child would dash in front of his car, the critical question of fact is whether the defendant could and therefore should have seen the child standing by the side of the road. The law applicable to this factual situation would absolve the defendant had he not been able to observe the child before she suddenly darted into the road; and would hold him responsible if she were standing by the side of the road and in a position where he could and should have seen her.
We have read the instructions of the trial court as a whole, for the purpose of considering their adequacy, as suggested by Andry v. Farrell Lines, Inc., 478 F.2d 758 (U.S.Ct. of App. 5th Cir. 1973), and Bolden v. Kansas City Southern Railway Company, 468 F.2d 580 (U.S.Ct. of App. 5th Cir. 1972); but we find the charge did not adequately instruct the jury on the critical question of law raised by the evidence as stated above.
Where instructions concerning negligence, when construed together are confusing or misleading or omit an essential element, those instructions are insufficient. Gros v. Louisiana Power and Light Company, 288 So.2d 364 (La.App. 4th Cir. 1974), writ refused, 292 So.2d 243 (La. 1974).
Parties to a lawsuit have the right to have the evidence weighed in light of proper jury instructions, which fairly and reasonably point up issues presented by pleadings and evidence, and which provide correct principles of law for a jury's application thereto. Bush v. St. Paul Fire and Marine Insurance, 264 So.2d 717 (La.App. 1st Cir. 1972), writ refused, 262 La. 1180, 266 So.2d 452 (1972).
When a jury is utilized, that jury must accept the law as given by the trial judge and apply it to the evidence. Therefore, instructions to the jury should not be so erroneous as to deny a proper determination of the facts and issues under the law. Under this theory, jury instructions are inadequate where there is no assurance that the jury could make a legal determination of the issues before it. Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (1969).
Considering the instructions given in the instant case, it is obvious to this court that the law applicable to a material issue of fact, that is, whether Dawn Rene was present on the shoulder of Highway 1 so that defendant driver as a reasonable man should have seen her, was not adequately explained to the jury so as to enable them to make a proper application to the facts as found by them. For these reasons we are required to remand the case to the District Court for a new trial. Bienvenu, supra.
Accordingly, the judgment of the trial court is reversed and the case is remanded for a new trial. The assessment of costs is to await the final outcome of this litigation.
Reversed and remanded.